BROWN, Chief Judge.
| iThis is an appeal from a final judgment that awarded reimbursement to plaintiff, Jo Ann Boggs Barnes, for amounts she paid for improvements and expenses while living in a home owned by her son and former daughter-in-law, and another judgment ordering her to vacate the disputed property. Jo Ann Barnes has appealed the trial court’s determination that defendants, Julia Barnes Cloud and Clyde A. Barnes, III, were entitled to an offset for rent, and she seeks reimbursement for her wrongful eviction from the property together with the right of retention until paid in full. Julia Cloud raised several additional issues in her brief; however, she dismissed the appeal she filed and did not file an answer to Mrs. Barnes’s appeal so the only issues before this court are those asserted by Mrs. Barnes. For the reasons set forth below, we affirm in part, amend in part and as amended, affirm.

Facts

On November 2, 1993, plaintiff, Jo Ann Boggs Barnes, and her husband, Clyde Barnes, Jr., bought Lot 96 in A Quiet Place In The Woods Subdivision Unit No. 5 in Caddo Parish, Louisiana. They paid $3,000 for the lot. The Barnes obtained a loan from Premier Bank in January 1994. The amount financed was $41,797.78.[1] The collateral for the loan was a rental house *465 the Barnes owned on Holiday Street in Shreveport, Louisiana. They built a house on the lot. Jo Ann Barnes testified that the cost was approximately $50,000. After the house was built, on June 27, 1994, Jo Ann and Clyde executed a deed transferring the property to their son, Clyde |2A. Barnes III (“Tony”), and daughter-in-law, Julia Barnes (now Cloud), for the sum of $1,500. According to the testimony of Jo Ann Barnes and her son, the price was not paid and the property was transferred “in trust” to protect it from possible financial issues arising from Clyde Barnes’ alcohol and gambling addictions. In 1998, Clyde Barnes died. According to Mrs. Barnes and her son, Tony, there was no intention to permanently transfer the property, and Jo Ann Barnes has continuously lived in the house, paid the property taxes, maintained the property and made beneficial improvements since the transfer. In 2004, Tony and Julia divorced. In the divorce proceedings, Julia sought to have lot 96 included in the division of community property.
In August 2008, Jo Ann Barnes filed the instant suit against Tony and Julia. Mrs. Barnes requested that the court either transfer the property back to her or to allow her full use and/or usufruct. She alternatively requested reimbursement from the defendants of $116,468 she paid for property taxes and improvements. Mrs. Barnes alleges that she was entitled to retain possession of the property until she was reimbursed.
Julia filed exceptions of prescription and no right of action. She also argued that the instant suit was barred by res judicata. Mrs. Barnes filed a notice of lis pendens specifically identifying the Caddo Parish property.
In April 2009, the trial court overruled Julia’s exception of prescription at that time but reserved her right to raise it at trial on the merits. The trial court also ordered that should the property be sold, the amount of $116,468 was to be deposited into the registry of the court and |3the notice of lis pendens cancelled. In May 2009, the trial court denied a rule to evict Mrs. Barnes filed by Julia, finding that Mrs. Barnes was entitled to remain in the house until she was reimbursed.
In June 2009, Julia filed an answer and a reconventional demand in which she sought at least $75,000 in fair market rental value for a 15-year period and $67,500 for filing a frivolous action against her which resulted in the loss of a court-ordered sale of the property for $67,500. Julia also requested that Mrs. Barnes be evicted.
In response, Mrs. Barnes then filed a pleading entitled “Exceptions, answer and first supplemental and amending petition.” She dropped her demand to set aside the sale and transfer the property back to her; instead, she replaced it with a request that the court recognize her right to dwell in the house as a condition of a “trust agreement.” Mrs. Barnes also alleged that Julia unlawfully tried to evict her and interfered in a contract between Mrs. Barnes and the prospective purchaser that would have allowed her to stay in the house until the legal issues were resolved; she also requested mental anguish damages.
At trial, testimony was given by Mrs. Barnes, Tony and Julia. The trial court gave oral reasons for judgment in which it awarded Mrs. Barnes $58,211.50 in reimbursement but assessed her with rent in the amount of $32,400.[2] After the offset *466 for rent, Mrs. Barnes was to receive $25,811.50.
14A motion for new trial was filed by-Mrs. Barnes in which she sought additional damages and reconsideration of the rental payments that had been assessed against her. The motion was denied in part and granted in part; additional damages of $953.82 were awarded. On that same day, Julia’s motion to evict Mrs. Barnes was granted, and judgment was rendered which ordered Mrs. Barnes to vacate the premises and deliver the property to Julia on November 30, 2010. A petition of mandamus filed by defendants was granted ordering that the notice of lis pendens be cancelled from the mortgage records.
Both Mrs. Barnes and Julia Cloud filed motions for devolutive appeals. However, Julia subsequently dismissed her appeal.

Discussion

While the parties and the trial court have treated this action as one between possessor (Mrs. Barnes) and owners (defendants), it is more properly analyzed under the rules applicable to personal servi-tudes. Regardless of whether Mrs. Barnes had a usufruct, right of use or right of habitation, all of which, while real rights, are personal servitudes, the Civil Code provisions on usufruct govern the parties’ relative rights and responsibilities.[3] See, C.C. arts. 577-585, 631, 636, and 645.
Mrs. Barnes has appealed that part of the trial court’s ruling awarding defendants an offset for rent in the amount of $32,400. A usufructuary does |finot pay rent to the naked owner; instead, one who enjoys the right of usufruct, as “charges of the enjoyment” of this right, has the responsibility of paying for ordinary maintenance and repairs, as well as periodic charges such as property taxes. See, La. C.C. arts. 577, 584; Succession of Crain, 450 So.2d 1374 (La.App. 1st Cir.1984).
Furthermore, the testimony in this case reveals that the parties themselves did not contemplate imposing such an additional obligation on Mrs. Barnes. We therefore amend the trial court’s judgment to delete the offset awarded to defendants for “rent.”
Mrs. Barnes’s second assignment of error is that the trial court erred by evicting her from the property before she was fully reimbursed. La. C.C. art. 627 provides that upon termination of the usu-fruct, the usufructuary has the right to retain possession of the property until reimbursed for all expenses and advances for which she has recourse against the owners or their heirs. While defendants did not appeal from the reimbursement award, we note that the only amounts for which Mrs. Barnes was awarded reimbursement, nonpayment of which can be used to detain the property until reimbursed, are those which meet the narrow parameters of La. C.C. arts. 579 (extraordinary repairs) and 585 (extraordinary charges).
La. C.C. art. 578 defines extraordinary repairs as those for the reconstruction of the whole or of a substantial part of the *467 property subject to the usufruct, with all others being classified as ordinary repairs. Nothing on the list of items for which Mrs. Barnes was granted reimbursement by the trial court qualifies as an extraordinary repair. Paving assessments are ^extraordinary charges payable by the usufructuary but recoverable from the naked owners at the end of the usufruct. Comment (b) to La. C.C. art. 585. Mrs. Barnes was granted reimbursement for her payments for a parish paving lien totaling $7,621. To come within the scope of La. C.C. arts. 585 and 627, this assessment, however, must have arisen during the usufruct. An examination of the exhibits shows that the paving charges were incurred during the usufruct, and therefore are extraordinary charges recoverable from the naked owners at the termination of the usufruct. The record, however, reflects that defendants paid Mrs. Barnes $11,453.82 of the amount they owe her, which is more than the amounts she paid for the parish paving lien. Therefore, the trial court’s determination that Mrs. Barnes has no right of retention in this case will be upheld.
In summary, the trial court awarded Mrs. Barnes $58,211.50 on her reimbursement claim in its September 22, 2010, judgment, and an additional $953.82 in its judgment on her motion for new trial, for a total reimbursement award of $59,165.32. We note again that no appeal was taken from this award. Deducting the amount defendants have paid to Mrs. Barnes, $11,453.82, the remainder due to Mrs. Barnes on her reimbursement claim is $47,711.50.

Conclusion

For the reasons set forth above, we amend the judgment of the trial court as follows:
The amount of offset awarded to defendants, Julia Corpier Barnes Cloud and Clyde A. Barnes, III, is deleted. Defendants hereby owe plaintiff |7the sum of $47,711.50, the amount outstanding on her reimbursement claim. In all other regards, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendants.
AFFIRMED IN PART, AMENDED IN PART, and AS AMENDED, AFFIRMED.

. With the finance charge the total payments would be $61,164.

. Although the trial court's judgment awards defendants rental offset for 36 months, the parties have calculated the offset amount to be $47,700 (36 months from filing of petition plus 17 additional months). While this may have been what the trial judge intended to *466 award, neither party filed a motion to amend the judgment, which specifically states that, "defendants are entitled to an offset of rent for three (3) years."

. While all three parties have testified that Mrs. Barnes was living on the property in a usufruct-type situation, there was no testimony or evidence whatsoever as to the parties’ intent as to the terms or duration of this arrangement. We note that Julia testified that in 1999, she took Mrs. Barnes to the Caddo Parish Tax Assessor’s Office to document Mrs. Barnes' status as usufructuary so that Mrs. Barnes could benefit from the available homestead exemption.